IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARY M. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:03cv1003-SRW |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Mary M. Williams brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and disability insurance benefits under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

On May 4, 1998, plaintiff filed an application for disability insurance benefits and Supplemental Security Income.  On May 3, 2001, June 13, 2001 and February 25, 2002, after the claim was denied at the initial administrative levels, an administrative law judge (ALJ) conducted administrative hearings.  The ALJ rendered a decision on June 28, 2002, in which he found that plaintiff is not disabled within the meaning of the Social Security Act. On

August 5, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ committed reversible error by using improper credibility findings, (2) the ALJ failed to accord proper weight to the opinions of treating physicians, and (3) the ALJ improperly found that non-compliance was evidence that plaintiff was not disabled. For the reasons set

2

out below, the court concludes that the ALJ did not err in denying benefits.

1.    Credibility Findings

Plaintiff challenges the ALJ's credibility findings relating to her claim that she has pain in 98 percent of her body. She contends that these findings are inappropriate because the ALJ who wrote the decision in her case is not the ALJ who heard her testimony, and she charges that the ALJ who denied benefits engaged in improper "sit and squirm jurisprudence" – that is, he denied her claim because her behavior at the hearing did not meet his expectation of the behavior that should be exhibited by a disabled person. Memorandum of Law in Support of Plaintiff's Argument at 7-9. This contention is without merit.

Plaintiff's claim was initially heard by administrative law judge Richard C. Bentley on May 3, 2001. R. 21. Thereafter, administrative law judge Frank M. Klinger held supplemental hearings on June 13, 2001 and February 25, 2002. Id. Klinger issued a thorough decision on June 28, 2002, which considered a wide range of evidence, both medical and otherwise, that was presented in plaintiff's case. In his decision, Klinger summarized plaintiff's testimony from the May 3, 2001 hearing at some length. R. 23. Klinger offered no comment about plaintiff's demeanor at this hearing, for which he was not present. However, he noted, concerning his own personal observation of plaintiff during a subsequent appearance, that:

> [t]he claimant at the hearing rather consistently engaged in extreme verbal and non-verbal exclamations and demonstrations of pain which were not at all evident outside of the hearing room and quite candidly struck this independent finder of the fact as very apparently phony, although admittedly, as with the observations and findings of jurors, Judges and other finders of the fact in

3

other civil and criminal litigation, it is difficult to fully articulate what was rather readily apparent to the naked eye. Indeed if all finders of fact such as juries were compelled to fully articulate all of the reasons for their findings, one can only speculate as to how few verdicts would stand. I will note that her movements were a good deal more fluid than those of persons who are normally in pain, but the bottom line as to this point is simply that one had to be there to witness the readily apparent grossly exaggerated performance. In any event my own observations are of trivial weight compared to the fact that notwithstanding her financially self-serving complaints to the contrary, this claimant has no physical impairment reasonably capable of producing such extreme pain. Of course I am aware that her psychological impairments could be a contributing factor. If that were not a possibility, this decision would be a lot shorter. However I will note in passing that it does take a certain amount of intelligence and connection with reality to demonstrate extreme impairment when it is in one's financial self-interest to do so.

R. 23-4. It is this "credibility finding" to which plaintiff objects.

To the extent that this statement constitutes a credibility finding, the court concludes that it is a permissible one. Nowhere in his decision does the ALJ represent that he is discrediting plaintiff's testimony at the May 3, 2001 hearing, which he did not witness, based on her demeanor before him at a subsequent hearing. Instead, the ALJ simply disbelieved the "extreme verbal and non-verbal exclamations and demonstrations of pain"[1] which were offered in his own presence, "which were not at all evident outside of the hearing room," and

---

[1] Plaintiff "strongly asserts that there were no verbal exclamations of pain, as she never spoke during the hearing." Memorandum of Law in Support of Plaintiff's Argument at 8. The court agrees that the record reflects no verbal expressions of pain from plaintiff. However, the ALJ may have intended to refer to "vocal" or "audible" exclamations rather than "verbal" exclamations, a construction which appears to be reasonable under the circumstances. In the alternative, plaintiff's "verbal exclamations of pain" may not appear on the record because the court reporter did not record them, since plaintiff apparently did not utter them from the witness stand. In either case, the court accepts for purposes of this recommendation that plaintiff did make some kind of exclamation of pain during the hearing, as reported by the ALJ.

which "quite candidly struck this independent finder of the fact as very apparently phony."

R. 23. In so doing, the ALJ did not engage in impermissible "sit and squirm" jurisprudence.

As the Eleventh Circuit has noted, this term describes a situation in which "an ALJ who is

not a medical expert will subjectively arrive at an index of traits which he expects the

claimant to manifest at the hearing. If the claimant falls short of the index, the claim is

denied." Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984).[2] In this case, however, the

ALJ did not suggest that plaintiff failed to display the sort of demeanor that he expected from

a person who was in the kind of pain plaintiff claims. Instead, he merely commented on the

fact that it appeared to him that plaintiff was acting at the hearing – indeed, putting on a

"grossly exaggerated performance"of extreme pain. R. 24. Such an observation is a matter

of common sense, not a matter of medical knowledge, and the ALJ's comments are of a kind

which do not "encourage claimants to manufacture convincing observable manifestations of

pain," id., but rather tend to have the opposite effect.

    In addition, the ALJ noted that his comments were "of trivial weight in comparison

to fact that plaintiff has no physical impairment reasonably capable of producing such

extreme pain." R. 24. Thus, he did not rely exclusively, or even primarily, on his

observations of plaintiff's demeanor in making his decision. "The Administrative Law Judge

---

[2] The problem with this approach, as the Eleventh Circuit observed, is that it "will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain, or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel." Id.

can consider 'appearance and demeanor [of the claimant] during the hearing' as long as it is not exclusively relied upon." Long v. Shalala, 902 F.Supp. 1544, 1547 (M.D. Fla. 1995) (citation omitted); see also Villa v. Sullivan, 895 F.2d 1019, 1024 (11th Cir. 1990) ("While exclusive reliance upon demeanor in credibility determinations is inappropriate ... it is not reversible error for an ALJ to consider demeanor as one of several factors in evaluating a claimant's credibility.") (citation omitted); Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (An ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing, so long as he considers all the evidence in making his decision.); Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985) (The prohibition on "sit and squirm" jurisprudence is not intended "to prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing. Rather, an ALJ must not impose his observations in lieu of a consideration of the medical evidence presented.").

Here, the ALJ carefully analyzed the medical evidence relating to plaintiff's physical and mental impairments in considerable detail. After doing so, he observed that:

> The record includes evidence strongly suggesting that the claimant exaggerates her symptoms and limitations. Her testimony and allegations of "crippling arthritis," disabling pain, and functional restrictions are preposterous. They are completely disproportionate to the objective medical evidence. The record does not contain any objective signs and findings that could reasonably be expected to produce the degree and intensity of physical pain and limitations alleged. Erythrocyte sedimentation rate, RA factor and extensive diagnostic imaging have been essentially negative. She has repeatedly held herself out as having migratory arthritis because Dr. Pinchback's initial diagnostic impression was that she might have the disorder. When Dr. Pinchback got the lab results, he no longer promulgated the diagnosis of migratory arthritis. However, the claimant apparently clung to his initial impression, ignored his subsequent advice to do aggressive walking at home and that her symptoms

6

> would eventually subside. She continues to h\old herself out as having "crippling" migratory arthritis.
>
> There are not any diagnostic studies demonstrating abnormalities that might produce such severe symptoms as the claimant alleges. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged. While the claimant has lost weight, neither she nor any medical practitioner expressed concern over the weight loss. Moreover, such loss might be attributed to medication and lifestyle changes such as reports that she became a vegetarian.

R. 40. The court finds no error in the ALJ's analysis and, thus, it declines to disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Fontanez ex rel. Fontanez v. Barnhart, 195 F.Supp.2d 1333, 1353 (M.D. Fla. 2002).

2.   Treating Physicians

Plaintiff maintains that the ALJ improperly rejected the opinion of her treating psychiatrist, Dr. Fernando Lopez, that she "is disabled to work." R. 29; Memorandum of Law in Support of Plaintiff's Argument at 9-10. She contends that Dr. Lopez' statement, which the ALJ characterized as brief and conclusory, nevertheless proved accurate some weeks later when plaintiff had a psychiatric hospitalization for a suicide attempt. She also argues that the fact that she did not see Dr. Lopez often – that is, she visited with a counselor for most appointments, instead of the doctor – does not "mean that he is not in charge of her treatment." Id.

The ALJ discussed Dr. Lopez' opinion that plaintiff was "disabled to work" as follows:

> Dr. Lopez, the claimant's "treating" psychiatrist [,] penned the following note

7

dated January 19, 1999, on a prescription pad. "Mrs. Williams is under medical treatment and she is "disabled to work" (Exhibit 13F at 23). I reject his opinion that the claimant is "disabled to work" for a variety of reasons. I am mindful of and in agreement with the opinion expressed by the late Judge Frank M. Johnson, Jr., stating that

> [a]n ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physician ... [a]n ALJ must not arrogate the power to act s both judge and physician.

*Marbury v. Sullivan*, 957 F.2d 837 840, 841 (11th Cir. 1992) (Johnson, J., concurring).

To agree with Judge Johnson's opinion that an ALJ must not arrogate the power to act as both judge and physician is to accept the converse; a treating physician must not arrogate the power to act as both physician and judge. While a medical opinion statement concluding that a claimant is unable to work *may* be persuasive, it must be observed that the issue of whether an individual is disabled under the Social Security Act is reserved to the Commissioner of the Social Security Administration. At the hearing level, the Administrative Law Judge is responsible for making the determination regarding disability (20 C.F.R. §§ 404.929 and 416.1429). I always carefully consider medical source opinions about issues that are reserved to the Commissioner as required under 20 C.F.R. §§ 404.1527(e) and 416.927(e) and Social Security Ruling 96-5p. However, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight.

A treating physician's opinion may be rejected "when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings" or "when it is not accomplished by objective medical evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). *Schnorr v. Bowen*, 816 F.2d 578, 482 (11th Cir. 1987); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). A treating physician's opinion may be disregarded if it is unsupported by objective medical evidence or is merely conclusory. *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987); *McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987). The administrative law judge provided good cause for rejecting the treating physician's opinion since: 1) the doctor failed to provide clinical data or information to support his opinion; 2) this opinion was contradicted by other notations in his own records. *Edwards v. Sullivan*, 937 F.2d 580 (11th Cir. 1991). An administrative law judge can

reject a treating physician's opinion where the rejection is based on record evidence contradicting the opinion. *Lucas v. Sullivan* 918 F.2d 1567 (11th Cir. 1990).

Social Security Ruling 96-2p states that:

> Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

Not only is Dr. Lopez's opinion that the claimant is "disabled to work" an opinion that is reserved to the Commissioner, it is so brief and conclusory that it lacks persuasive weight; it is unsubstantiated by any clinical or laboratory findings, and it is not accompanied by objective medical evidence. There is no indication in the medical evidence of record that Dr. Lopez has ever administered any type of diagnostic testing or standardized personality assessment such as the MINNESOTA MULTI PHASIC PERSONALITY INVENTORY to the claimant. Indeed, although Dr. Lopez has a relationship with the claimant covering more than three years, as Dr. Sack noted, the evidentiary record demonstrates that his contact with the claimant has been brief and infrequent. Careful scrutiny of records obtained from Dr. Lopez at East Alabama Medical Center demonstrates that he has done little more than sign off on reports from the claimant's counselor and a registered nurse, before prescribing or continuing medication for the claimant.

It is worthy of note that less than a month after Dr. Lopez opined on a prescription pad that the claimant is "disabled to work," she presented to Dr. Ogunbi with concerns about her eligibility for Medicaid and disability (Exhibit 5F at 3). No rationale is given for Dr. Lopez['] apparent epiphany that the claimant is "disabled to work," or why he would have made a brief note of that on a prescription pad. In the context of a claimant who is actively pursuing a disability claim, it must be remembered that the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient[']s requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current

case.  For the same reasons, I give little weight to the opinions Dr. Lopez expresses on the SQRFC form dated July 10, 2001 (Exhibit 16F at 2-3), opining that the claimant has extreme limitation of functioning in some areas and marked limitation of functioning in several other areas.  Dr. Sack, who has had the opportunity to examine the entire medical evidentiary record, is of the opinion that the level of limitation noted by Dr. Lopez on the form is inconsistent with the reports of her therapist and of the registered nurse, who have been in much closer and more frequent contact with the claimant than has Dr. Lopez.  I also note that the claimant's GAF was assessed at 55 on July 21, 1999 (Exhibit 17F), about six months after Dr. Lopez opined that she was "disabled to work."  As previously noted, a GAF of 55 denotes only moderate symptoms, not marked or extreme symptoms.  On September 13, 2001, her GAF was assessed at 75, which is described as "**If symptoms are present, they are transient and expectable reaction to psychosocial stressors** (e.g., difficulty concentrating after family argument); **no more than slight impairment in social, occupational, or school functioning**" (DSM-IV, *supra* at 32).  This is barely two months after Dr. Lopez completed the SQRFC form noting several extreme and many marked limitations.   Examining psychologists including Dr. King and Dr. Ray have performed diagnostic testing as well as in depth mental status examinations and interviews.  They have not found the claimant's impairments to be nearly as sever as Dr. Lopez finds them.  For all of the foregoing reasons, I can give great weight to Dr. Lopez diagnosis of paranoid schizophrenia, but little weight to his SQRFC assessment.

R.  37-39.  The ALJ explained further:

I give great weight to the opinions expressed by Dr. Sack.  Generally, the more consistent an opinion is with the record as a whole, the more weight I give to that opinion (20 C.F.R. §§ 404.1527d(4) and 416.927d(4).  Dr. Sack's opinion is far more consistent with the medical evidence of record than is Dr. Lopez's opinion.  She is a licensed clinical psychologist who gave testimony under oath and was subject to cross-examination.  Moreover, she is the only practitioner who had the opportunity to examine the entire medical evidentiary record, and she wrote that evidence submitted after her testimony would not have changed her opinion.

R. 39.

The ALJ did not err in rejecting Dr. Lopez' conclusory opinion that plaintiff is

disabled.  "The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization." Heppell-Libsansky v. Commissioner of Social Security, 2006 WL 622745, *4 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1)-(6)(unpublished). "Moreover, opinions on some issues are not medical opinions because they are dispositive administrative findings reserved to the Commissioner, including the ultimate determination of whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1)." Id.  In Social Security cases, "[a] treating physician's testimony 'must be given substantial or considerable weight unless good cause is shown to the contrary.'" Id. (Citation omitted). "...[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id.; see also Crawford v. Commissioner Of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) ("A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'").

Here, the ALJ did not err by failing to accord Dr. Lopez' statement that plaintiff is "disabled to work" controlling weight, because this is not a medical opinion under the Social Security regulations but, rather, it is a dispositive finding left to the ALJ. See 20 C.F.R. § 404.1527(e)(1); Heppell-Libsansky, 2006 WL 622745 at *4.  Moreover, although Dr. Lopez was a treating physician, he personally examined plaintiff only infrequently. See 20 C.F.R. § 404.1527(d)(2)(i)-(ii). He developed no objective medical evidence to support his opinion,

11

and his view is inconsistent with the progress notes written by Dr. Lopez' staff. Accordingly, the ALJ did not err by refusing to accord controlling weight to Dr. Lopez' opinion that plaintiff is disabled on the basis that "it is so brief and conclusory that it lacks persuasive weight; it is unsubstantiated by any clinical or laboratory findings, and it is not accompanied by objective medical evidence."  R. 37.

3.   <u>Non-Compliance</u>

Plaintiff contends that the ALJ erred in relying on plaintiff's non-compliance with treatment to find that she is not disabled, when her non-compliance "is in fact evidence of the mental illness itself."   Memorandum of Law in Support of Plaintiff's Argument at 11. The ALJ discussed this issue as follows:

> While [plaintiff] clearly has mental problems, i.e., paranoid schizophrenia and depression, she has undetermined her credibility by her well documented noncompliance with treatment and a pattern of deceit illustrated by disingenuousness with her own therapist, who wrote repeatedly that the claimant's accounts of her symptoms were questionable.  For example, the therapist writes, "this reported [sic] is questionable as pt. seldom tells the truth about her condition" (Exhibit 13F at 20).  The records from East Central Mental Health-Mental Retardation are rife with notations regarding her total noncompliance with treatment.  It appears to be more than mere coincidence that the claimant's lone psychiatric hospital admission at Jackson Hospital on February 18, 1999, closely follows her presentation to Dr. Ogunbi, with a friend who was "concerned about patient being in what she considers to be a 'zombie' state."  The friend wanted the claimant's psychotropic medications stopped and was also concerned about her eligibility for Medicaid and disability.
>
> While the claimant may become psychotic at times when she is noncompliant with medication, the record clearly demonstrates that her psychosis abates when she takes medication as directed.  To the extent that the claimant's impairments have disabled her at any time relevant to the period under adjudication, I find that her disability is caused bynullified by [sic] her

uncontroverted history of noncompliance.  A statement from East Central Mental Health-Mental Retardation dated March 29, 2000, indicates that her "*[c]ompliance with treatment is minimal at best, and case has been closed three (3) times due to non compliance*" (emphasis added) (Exhibit 13F at 7).

20 C.F.R. §§ 404.1530(a) and 416.93(a) state that in order to get benefits, the claimant must follow treatment prescribed by his or her physician if this treatment can restore the claimant's ability to work.  20 C.F.R. §§ 404.1530(a) and 416.93(b) require that if the claimant does not follow the prescribed treatment without a good reason, I will not find the claimant disabled or blind or, if the claimant is already receiving benefits, we will stop paying benefits. The Courts deny benefits for failure to follow prescribed treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that would restore the ability to work.  *Lucas v. Sullivan*, 918 F.2d 1567, 1571, 31 (11th Cir. 1988).  In addressing the issue of noncompliance, the Eleventh Circuit Court of Appeals has stated,

> We agree with every circuit that has considered the issue of poverty excuses noncompliance .... Thus while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law'....The burden of proving unjustified noncompliance is on the Secretary.

*Dawkins v. Bowen*, 848 F.2d 1211, 1213-1214, (11th Cir.1988).

In the instant case, however, the record clearly demonstrates that the claimant was noncompliant with taking her medications as directed far earlier than August 1, 2000, when for the first time, it is noted that she allegedly no longer had insurance and could not afford her medication (Exhibit 13F at 3).  However many programs, clinics and free medication samples do exist for the indigent.

R. 42-43.

In this case, the court finds that the ALJ applied the correct legal standards in reaching

the conclusion that, to the extent that plaintiff's impairments disabled her at any time relevant

to the period under adjudication, her disability was caused by or nullified by her uncontroverted history of noncompliance. See e.g., Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003); Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990). Substantial evidence supports his factual findings.[3]  See, e.g., R 422, 424, 432, 433, 434, 436, 437, 451, 500, 510, 515, 532, 543 (documenting non-compliance).  The court notes that plaintiff does not cite to any medical evidence in the record supporting her contention that her non-compliance may have been the result of her mental condition.  Compare Bennett v. Barnhart, 288 F.Supp.2d 1246, 1252 (N.D. Ala. 2003) (consulting psychologist concluded that "[c]omprised insight and judgment are evidenced by failure to maintain active involvement in therapy and/or in self-help groups.").  Indeed, the record suggests that plaintiff was well aware that her symptoms improved with the aid of medication.  See R. 423, 425, 427, 430, 433, 441, 446, 448, 492, 493, 494, 497, 499, 501, 503, 506, 510, 542. In addition, the ALJ did not rely on non-compliance as the sole ground for the denial of disability benefits.  See Ellison,355 F.3d at 1275.

## CONCLUSION

Accordingly, upon its review of the record as a whole, the court concludes that the decision of the Commissioner should be AFFIRMED.  A separate judgment will be entered.

DONE, this 18th day of April, 2006.

---

[3]

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE